# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TENSION ENVELOPE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 14-567-CV-W-FJG |
| | ) |
| JBM ENVELOPE COMPANY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Currently pending before the Court is plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. # 2).

## I. BACKGROUND

Tension Envelope Corporation is an envelope manufacturer which manufacturers and prints many of its envelopes and contracts with other specialty manufacturers to manufacture envelopes for Tension's customers. JBM Envelope Company was started in 1985, by Greg Sheanshang, a former Tension employee who left Tension to form an envelope brokerage business. In 1989, JBM got out of the brokerage business and became a manufacturer of small open-end envelopes. Tension alleges that JBM told them that it would only sell to the trade and would not sell directly to Tension's customers. Based on these assurances, Tension agreed to use JBM to manufacture specialty envelopes for its customers. Tension alleges that for more than ten years the parties conducted business on these terms. Tension states that it even leased two specialty machines to JBM for it to use in making the specialty envelopes. In 2008,

Greg Sheanshang's son, Marcus, purchased JBM from his father. On June 19, 2014, JBM notified Tension that it would begin selling directly to Tension's two largest customers. On June 23, 2014, JBM contacted the buyers for Customers A and B and advised them that JBM had terminated its arrangement with Tension and was now going to sell directly to them. Tension alleges that while it is possible for Tension to either directly manufacture these envelopes themselves or contract with specialty manufacturers for the production of these envelopes, it may take up to 12 to 18 months to modify its existing equipment or purchase new equipment.

## II. STANDARD

In determining a litigant's right to a temporary restraining order, the Court considers four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Kelly v. Reeves, No. 4:11CV3208, 2012 WL 37519, *3 (D.Neb. Jan. 9, 2012) citing (Dataphase Systems. Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)).

## III. DISCUSSION

### A. Probability of Success on the Merits

**1. Breach of Contract**

Tension argues that its contract claims are governed by Article 2 of the UCC, specifically provisions 2-204, 2-208 and 2-306. Tension argues that this provision provides that "[a] contract for the sale of goods may be made in any manner sufficient to

show agreement, including conduct by both parties which recognizes the existence of such a contract." Mo.Rev. Stat. §§ 400.2-204(1). Tension argues that over the ten year course of performance, the parties have evidenced an agreement whereby JBM agreed to supply Tension with specialty envelopes as needed to fill the requirements of Tension's customers. Tension asserts that the terms of the parties' agreement is clear, "not from any formal, written, signed contract, but from the statements and conduct of the parties, as evidenced by their ten-year course of performance. Under the UCC, this is all that is required to prove the existence of a binding contractual agreement." (Tensions's Suggestions in Support, p. 8). Tension argues that Section 2-204 and 2-208 establish the existence of an agreement and Section 2-306 establishes the terms of the agreement and thus Tension has established the existence of a valid, binding contract, which JBM has breached.

The Court disagrees. As JBM notes in its suggestions in opposition, "[n]o contract or agreement has ever existed between Plaintiff and Defendant that requires Tension to use JBM as its exclusive supplier of any particular envelope products or requires JBM to continue to supply any products to Tension." (JBM's Suggestion in Opposition, p. 4). In Teter v. Glass Onion, Inc., 723 F.Supp.2d 1138 (W.D.Mo. 2010), the Court considered a similar argument. In that case, an art gallery argued that it had contractual rights under the UCC to use the artist's images for advertising purposes. The art gallery contended that an agreement for the sale of goods was formed based on an agreement during a meeting between the parties. In that case, the parties engaged in approximately eight transactions over a nine month period of time. In Teter, this court stated:

> a sale of goods contract under the UCC does not displace principles of the common law of contracts. . . . An enforceable contract requires that the parties be (1) competent to contract, (2) be of proper subject matter,

3

(3) have legal consideration, (4) mutuality of agreement and (5) obligation. Id. at 1159 (internal citations omitted). In Teter, the Court noted that consideration is found where "both parties have obligated themselves by mutual promises that impose some legal duty or liability on each promisor." Id. However, the Court noted that if the parties had not bound themselves to such an obligation, "there is no legal contract between the parties because there is a failure of consideration." Id. In Teter, the gallery owners argued that the parties reached an agreement and based on their subsequent conduct, an agreement existed. However, this Court disagreed and found that the purported agreement failed for indefiniteness and lack of consideration, stating, "Teter was under no legally enforceable obligation to continue selling artwork to the Gallery at any point in time, neither under [the former owner] nor [the current owner]'s ownership. Teter could stop selling or refuse to sell a painting to the Gallery if he so chose, and the Gallery would have had no legal recourse to enforce the sale." Id. at 1160. The Court finds this case analogous to the instant action. In this case, as in Teter, JBM was not obligated to continue accepting orders and manufacturing envelopes for Tension and Tension was not obligated to continue sending orders to JBM. Tension has failed to establish that JBM assumed any obligation to Tension. For these reasons, the Court finds it unlikely that Tension will succeed on the merits of its breach of contract claim.

**2. Promissory Estoppel**

"A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 590 (Mo.banc 2007). Tension argues that JBM repeatedly promised that it would only sell to the trade and not

4

to end users.  Tension states that it relied on this promise in making JBM its exclusive supplier of some of its products and it would not have done so, had it believed that JBM would sell envelopes directly to Tension's customers.  Tension argues that it would be unjust to allow JBM to ignore its promise and to take away Tension's customers.

JBM argues that it never promised that it would never sell its product to end users. In fact, JBM argues that it has in the past sold its products to end users, and Tension was aware of this.  JBM also argues that to succeed on promissory estoppel, the promise must have been definite and must have arisen in a contractual sense.  See Meng v. CitiMortgage, Inc., No. 4:12-CV-514 CAS, 2013 WL 1319008,*7 (E.D.Mo. Mar.29, 2013).  "A supposed promise that is wholly illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." Id. (citing City of St. Joseph, Missouri v. Southwestern Bell Tel., 439 F.3d 468,477 (8th Cir. 2006)). It has also been noted that "[i]n Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement."  Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866,877 (Mo.App.2012).

Tension argues that the evidence is "uncontroverted" that JBM repeatedly promised that it would only sell to the trade, and not to end users. Tension states that JBM made this statement publicly on its website and continues to make it today.  However, the Court does not find that this is the sort of specific promise that can support a claim of promissory estoppel.  A statement on a website is just that – a statement.  It is not a promise that JBM will never change its business model or decide to sell to end users. Rather, as the Court in City of St. Joseph noted, this is simply an expression of what the company's policy currently was, but this does not show that JBM made any sort of

5

commitment that it would never sell to end users, nor is this the type of statement on which Tension should have relied. For these reasons, the Court also finds it unlikely that Tension will prevail on its promissory estoppel claim.

### 3. Tortious Interference with Business Relationship

> Tortious interference with a contract or business expectancy requires proof of five elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages.

Service Vending Co. v. Wal-Mart Stores, 93 S.W.3d 764, 769 (Mo.App.2002).

Tension argues that it has a business relationship with Customer A and Customer B and that JBM knew of these relationships. Tension argues that when JBM's President called those customers and told them that they could no longer purchase specialty envelopes from Tension and instead could only purchase them from JBM, it tortiously interfered with those relationships. Tension states that it has incurred damages because JBM rejected purchase orders which Tension attempted to place with JBM for products for Customer A. Tension argues that there was no justification for the interference because JBM used improper means to cause Customer A and Customer B to terminate their business relationships with Tension. Tension also argues that JBM improperly represented to Customers A and B that the relationship with Tension had been lawfully terminated. Tension argues that under the UCC, JBM could not terminate the relationship without giving Tension "reasonable notice."

JBM argues that in this case, it has the right to do business directly with end users and those end user customers have a right to enter into orders with them directly.

> Absence of justification is the absence of any legal right on the part of the defendant to take the actions about which a plaintiff complains. . . .Under Missouri law, unless an improper means is used, defendants are justified

6

> in interfering with a contract or business expectancy if they have an unqualified legal right to do the action of which the petition complains. . . . Means are improper if they are independently wrongful, meaning that they include threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.

Ronwin v. Ameren Corp., No. 4:08CV1536CDP, 2008 WL 1777464, *2 (E.D.Mo.Apr.15, 2008) aff'd 364 Fed.Appx. 289 (8th Cir.2010)(internal citations and quotations omitted).

Tension argues that JBM used improper means because JBM's president misrepresented the nature of the Tension-JBM relationship and falsely claimed that the relationship was lawfully terminated, when under Section 2-209(3), JBM could not terminate the relationship without giving Tension notice. The Court disagrees and finds that JBM did not improperly communicate with either Customers A and/or B. As discussed above, because there was no contract or non-compete agreement in place, JBM was free to communicate with Customers A and B and accept orders directly from them. Accordingly, the Court finds it unlikely that plaintiff will succeed on its tortious interference claim.

### 4. Misappropriation of Trade Secrets

"A claim for misappropriation of trade secrets under the [Missouri Uniform Trade Secrets Act] has three elements: (1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC, 422 S.W.3d 312, 320 (Mo. banc 2014).

Tension argues that it shared with JBM, not only the list of its customers, but their specific requirements and preferences, together with each customer's past purchasing history. Tension argues that JBM misappropriated this information when it used the

trade secrets without Tension's consent and in violation of a duty to maintain the secrecy of the information.  Tension argues that the duty arose from JBM's repeated promises not to sell envelopes directly to Tension's customers.

JBM responds that the mere identity of the names of two customers does not rise to the level of a "trade secret" when that information is available from other sources.  JBM argues that the identity of Customer A was disclosed to JBM by Cenveo, not Tension. Tension also argues that JBM misappropriated the "special and unique requirements" of these customers. However, JBM argues that this information is also available from other sources, such as the customer itself, so it does not rise to the level of being a "trade secret."  Additionally, JBM argues that the identity of Customer B is also widely known within the industry and thus cannot be considered a trade secret. The Court agrees and finds that it is unlikely that Tension will succeed on its misappropriation of trade secrets claim.  Accordingly, because the Court finds it unlikely that Tension will succeed on any of its claims, the Court finds that the probability of success on the merits factor weighs against entry of a temporary restraining order.

**B.  Threat of Irreparable Harm**

Tension argues that "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury."  United Healthcare Ins. Co. v. Advance PCS, 316 F.3d 737, 741 (8th Cir.2002). Tension states that it is only asking the Court to maintain the status quo, directing JBM to continue filling purchase orders from Tension, as it has done in the past.  Thus, Tension argues that the harm from not entering the temporary restraining order, is greater than simply requiring JBM to continue doing what it has done for the last several years.

JBM states that plaintiff is not entitled to a TRO because it has failed to establish any irreparable harm and it has an adequate remedy at law. JBM states that plaintiff's claim of irreparable harm is based on alleged "customer confusion." Tension is alleging that Customer A does not want to have an interruption in their envelope service and needs clarity on who it should order envelopes from. JBM states that this does not represent irreparable harm and plaintiff has an adequate remedy at law – monetary damages. The Court agrees and finds that Tension has not shown that it will suffer irreparable injury if the TRO is not granted. Accordingly, this factor also weighs in favor of denying the motion.

### C. Balance of Harms

JBM states that Tension is not seeking to simply "maintain the status quo." Rather, JBM states that Tension is asking the Court to create a covenant not to compete which does not exist. JBM states that Tension is also seeking a mandatory injunction to compel JBM to accept orders from Tension when it has no obligation to do so. JBM argues that the balance of harm weighs in favor of denying the motion for a TRO. JBM states that it would be substantially harmed if the Court were to restrain it from engaging in free market competition and selling directly to end users. The Court agrees and finds that the balance of harms factor weighs in favor of denying the motion for temporary restraining order.

### D. Public Interest

Plaintiff argues that the public interest is served by enforcing contractual obligations. Tension argues that the public interest is best served by requiring JBM to fulfill its contractual obligations and by requiring JBM to live up to its promise not to sell

directly to end users.

JBM states that there is no public interest served by a judicially imposed covenant not to compete and mandatory requirement to do business with another company as sought by plaintiff. Rather, JBM argues that the public interest is better served by allowing a company to do business with whomever it chooses in the absence of any enforceable non-competition agreement between the parties. JBM argues that protection of the freedom of contract is a strong public interest. As discussed above, the Court finds that there was no contract or other non-compete agreement between Tension and JBM. Therefore, the Court agrees with JBM that the public interest would be best served by encouraging free market competition. Accordingly, the Court finds that this factor also weighs in favor of denying the motion.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** plaintiffs' Motion for a Temporary Restraining Order (Doc. # 2).

At the conclusion of the teleconference on July 1, 2014, the Court directed the parties to confer regarding a scheduling order. Accordingly, after the parties have met they shall submit to Rhonda Enss (rhonda_enss@mow.uscourts.gov) on or before **July 11, 2014**, a proposed scheduling order, outlining: (1) the scheduling of a preliminary injunction hearing and (2) the timing of expedited discovery. Following this submission, the Court will enter a scheduling order for the preliminary injunction hearing.

Date:   July 7, 2014  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge