# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| TENSION ENVELOPE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 14-567-CV-W-FJG |
| | ) |
| JBM ENVELOPE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant JBM Envelope Company ("JBM's") Motion to Dismiss (Doc. # 25), JBM's Motion to Dismiss plaintiff's First Amended Complaint (Doc. #36) and plaintiff Tension Envelope Corporation ("Tension's") Motion for Leave to File Second Amended Complaint (Doc. # 65).

### I. BACKGROUND

Tension Envelope Corporation is an envelope manufacturer which manufacturers and prints many of its envelopes and contracts with other specialty manufacturers to manufacture envelopes for Tension's customers. JBM Envelope Company was started in 1985, by Greg Sheanshang, a former Tension employee who left Tension to form an envelope brokerage business. In 1989, JBM got out of the brokerage business and became a manufacturer of small open-end envelopes. Tension alleges that JBM told them that it would only sell to the trade and would not sell directly to Tension's customers. Based on these assurances, Tension agreed to use JBM to manufacture specialty envelopes for its customers. Tension alleges that for more than ten years the

parties conducted business on these terms. Tension states that it even leased two specialty machines to JBM for it to use in making the specialty envelopes. In 2008, Greg Sheanshang's son, Marcus, purchased JBM from his father. On June 19, 2014, JBM notified Tension that it would begin selling directly to Tension's two largest customers. On June 23, 2014, JBM contacted the buyers for Customers A and B and advised them that JBM had terminated its arrangement with Tension and was now going to sell directly to them. Tension alleges that while it is possible to either directly manufacture these envelopes themselves or contract with specialty manufacturers for the production of these envelopes, it may take up to 12 to 18 months to modify its existing equipment or purchase new equipment.

Tension filed its initial complaint on June 25, 2014 and the same day also filed a motion for temporary restraining order. The motion for a TRO was denied on July 7, 2014. On July 17, 2014, JBM filed a motion to dismiss the Complaint. On July 29, 2014, the Court entered a Scheduling Order and set September 16, 2014 as the date for the hearing on the preliminary injunction motion. On August 7, 2014, Tension filed its First Amended Complaint, which added additional factual details and a claim for unfair competition. On August 19, 2014, JBM filed a Motion to Dismiss Tension's First Amended Complaint. On August 22, 2014, JBM filed a Motion to Stay All Proceedings pending a ruling on the Motion to Dismiss. On September 10, 2014, the Court granted the Motion to Stay noting that the parties were still supplementing their discovery responses and conducting discovery. On September 18, 2014, Tension filed a Motion for Leave to File a Second Amended Complaint. The Court now considers both the Motion to Dismiss the First Amended Complaint and the Motion for Leave to File a

Second Amended Complaint.

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

It should also be noted that Fed.R.Civ.P. 9(b)'s pleading requirements are also applicable in this case.

## III. DISCUSSION

### A. JBM's Motion to Dismiss Initial Complaint

As noted in the procedural history above, JBM filed its initial motion to dismiss on July 17, 2014. However, rather than file a response to the Motion to Dismiss, Tension filed an Amended Complaint. Therefore, the Court denies JBM's Motion to Dismiss as **MOOT** (Doc. # 25).

**B. JBM's Motion to Dismiss First Amended Complaint**

**1. Breach of Contract**

"The elements of a breach of contract claim are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party." Ancell v. U.S. Bank Trust, N.A., No. 2:13-CV-4251-NKL, 2014 WL 2048200, *7(W.D.Mo. May 19, 2014) citing (Midwest Bankcentre v. Old Republic Title Co. of St. Louis, 247 S.W.3d 116,128 (Mo.App.2008)).

In the First Amended Complaint, Tension alleges the following:

● "For more than ten years, Tension Envelope and JBM have performed pursuant to a contract for the sale of goods, evidenced by the conduct of both parties, which recognizes the existence of such a contract." (¶ 63).

● "Throughout this ten-year period, JBM Envelope repeatedly sent signed letters and other written communications that acknowledged the existence of the parties' contract." (¶ 64).

● "Specifically, Tension Envelope and JBM Envelope have engaged in a course of performance whereby they have purchased and sold envelopes on repeated occasions under an agreement in which JBM Envelope agreed to manufacture envelopes to meet Tension Envelope's requirements for sale . . .." ( ¶ 65).

● "Pursuant to this contract, JBM Envelope became the exclusive supplier of certain envelopes for Tension Envelope's customers . . .and JBM Envelope agreed to fill all of Tension Envelope's requirements for these envelopes for these customers. . ..(¶ 66).

JBM argues that Tension has failed to sufficiently allege the existence and terms of a valid and enforceable agreement.  JBM argues that there are no allegations in the Amended Complaint regarding the specific terms of the contract, the rights and obligations of the parties, the duration of the contract, the amounts involved or any agreement that Tension would use JBM as its exclusive supplier or that JBM was

prohibited from supplying its envelopes to other customers or to continue supplying Tension. JBM argues that the Amended Complaint is so vague and lacking in factual allegations, that no cause of action is stated.

Tension argues that its contract claims are governed by Article 2 of the UCC, specifically provisions 2-204, 2-208 and 2-306. Tension argues that this provision provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Mo.Rev. Stat. §§ 400.2-204(1). Tension argues that over the ten year course of performance, the parties have evidenced an agreement whereby JBM agreed to supply Tension with specialty envelopes as needed to fill the requirements of Tension's customers. Tension argues that the First Amended Complaint describes the parties' long standing arrangement and course of dealing, and shows that Tension agreed to shut down its own small open-end envelope manufacturing capability, when it agreed to buy all of its requirement for these envelopes from JBM. Additionally, Tension argues that the First Amended Complaint details how JBM was Tension's exclusive supplier for these envelopes. Tension states that it may use this course of dealing as extrinsic evidence to establish the existence of a requirements contract.

Accepting all of Tension's factual allegations as true, the Court finds that Tension has stated a claim for breach of contract. However, the Court finds that there are portions of the Complaint which plaintiff could further expand upon. For example, Tension alleges that over the course of the ten year period, JBM Envelope sent signed letters and other written communications that acknowledged the existence of the parties' contract. However, Tension failed to attach any of these letters or

5

communications to either the first Amended Complaint, or the proposed Second Amended Complaint. It would be instructive to know what was contained in these letters and written communications and to see how the writing reflected the parties' relationship. As the Court noted in <u>Ancell</u>, "[a] complaint alleging breach of contract cannot survive a motion to dismiss if it fails to set out the rights and obligations of the parties under the contract alleged to have been breached." <u>Id</u>. at *7. In that case the plaintiff alleged CitiMortgage breached the terms of the note when it placed hazard insurance on plaintiff's home despite the fact that coverage was provided by plaintiff's insurer. The Court noted that "[p]laintiffs failed to attach the note or identify any specific agreement or provision within the note that dictated when and under what circumstances CitiMortgage could or could not place insurance on Plaintiffs' home and how coverage of the home by Plaintiffs' insurer affected those circumstances." <u>Id</u>. The Court noted that "[v]ague references to unspecified agreements are insufficient to state a claim for breach of contract." <u>Id</u>. (quoting <u>Reitz v. Nationstar Mortg., LLC</u>, 954 F.Supp.2d 870, 884 (E.D.Mo.2013)). Therefore, because the Court finds that Tension has stated a claim for breach of contract, the Court will **DENY** Tension's Motion to Dismiss Count I of plaintiff's First Amended Complaint. However, in order to allow Tension to properly frame a response to the breach of contract claim, the Court finds that plaintiff shall file an Amended Complaint which provides additional factual details regarding the relationship between the parties, and which also specifies and details the contents of the letters and written communications between the parties. Plaintiff shall file its Second Amended Complaint on or before **March 13, 2015**.

6

## 2. Promissory Estoppel

"A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 590 (Mo.banc 2007).

In Count II, Tension argues that JBM repeatedly promised that it does not and would not sell directly to Tension's customers. (¶ 76). Tension states that the promises are consistent with and include the representations on JBM's website that it sells exclusively to the trade and not to end users. (¶ 77). Tension states that it relied on these representations when it made JBM its exclusive supplier of certain envelopes, discontinued its own small envelope manufacturing capability and shared with JBM the identity of its customers and their unique needs. (¶ 80). Tension states it would not have done so, had it believed that JBM would sell envelopes directly to Tension's customers. Tension states that JBM has now repudiated its promise not to sell to Tension's customers and as a result, Tension has suffered damages. (¶ 82).

JBM argues that the statements on the website were directed to the general public, and were not directed to Tension. Additionally, JBM states that the statements were not "definite promises" but instead were the statements of the current business intentions of JBM. JBM states that it never promised Tension that it would never sell its product to end users. In fact, JBM argues that it has in the past sold its products to end users, and Tension was aware of this. JBM also argues that to succeed on promissory estoppel, the promise must have been definite and must have arisen in a contractual sense. See Meng v. CitiMortgage, Inc., No. 4:12-CV-514 CAS, 2013 WL 1319008,*7 (E.D.Mo.

7

Mar.29, 2013). "A supposed promise that is wholly illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." Id. (citing City of St. Joseph, Missouri v. Southwestern Bell Tel., 439 F.3d 468,477 (8th Cir. 2006)). It has also been noted that "[i]n Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866, 877 (Mo.App.2012).

Tension argues that in the Amended Complaint, it is alleged that "[w]hen JBM Envelope's founder, Greg Sheanshang, first approached Tension Envelope in or around 2000 about manufacturing envelopes for Tension Envelope, Greg affirmatively and unequivocally represented that JBM Manufacturing did not, and **would not**, sell direct to Tension Envelope's customers." (FAC, ¶ 21)(emphasis added). Tension argues that JBM acknowledged this promise in a discussion that Tension's President, Bill Berkley had with Marcus Sheanshang on June 23, 2014. Tension alleges in the complaint that when Marcus informed Berkley that JBM intended to terminate the arrangement and would begin selling directly to Tension's customers, Berkley stated, "This is contrary to everything you have told us about not going direct with our customers." Marcus stated that he agreed with that statement. (FAC, ¶¶ 45-46). Tension also alleges that in addition to the statements on its website, JBM directed Tension's representatives to its website to get answers about JBM's business practices. Thus, Tension alleges that JBM intended for it to rely on the representations and promises which were made regarding not selling direct to end users.

When ruling on a motion to dismiss, the Court assumes the truth of plaintiff's factual

allegations. Therefore, assuming that Greg Sheanshang told Tension that JBM did not

and would not sell directly to Tension's customers, the Court finds that this satisfies the

first element that there was a promise made. Secondly, Tension has also sufficiently

alleged that it relied on this promise to its detriment. Tension has also sufficiently

alleged that when Marcus confirmed that selling direct to Tension's customers was in

direct conflict with what JBM had always told Tension, Tension has alleged that it relied

on the promise in the way JBM expected it to. Finally, Tension has alleged that this

change has resulted in an injustice that only enforcement of the promise could cure.

Accordingly, because the Court finds that Tension has sufficiently alleged the elements

of a promissory estoppel claim, the Court hereby **DENIES** JBM's Motion to Dismiss

Tension's Claim for Promissory Estoppel.

### 3. Tortious Interference with Business Relationship

Tortious interference with a contract or business expectancy requires
proof of five elements: (1) a contract or valid business expectancy; (2)
defendant's knowledge of the contract or relationship; (3) an intentional
interference by the defendant inducing or causing a breach of the contract
or relationship; (4) absence of justification; and (5) damages.

Birdsong v. Bydalek, 953 S.W.2d 103, 111 (Mo.App. 1997).

In the First Amended Complaint, Tension alleges that:

84. Tension Envelope has existing business relationships with many of its
customers to supply those customers with envelopes that are currently
manufactured for Tension by JBM Envelope, including Customer A and
Customer B.

85. As Tension Envelope's supplier, JBM Envelope is aware of these business
relationships.

86. JBM Envelope acted improperly by falsely claiming that JBM has the legal
right to sell direct to Customer A and Customer B; the Tension-JBM
arrangement no longer exists; Tension can no longer supply Customer A and
Customer B with their envelopes; and Customer A and Customer B have no

9

other choice than to begin buying their envelopes directly from JBM.
. . .
88. JBM Envelope has also intentionally interfered with Tension Envelope's contract with Customer A by now selling direct to Customer A.

89. In so doing, JBM has used improper means to interfere with Tension Envelope's customer relationship with Customer A by, among other things, breaching its promise not to sell directly to Tension Envelope's customers.

90. JBM Envelope has also used improper means by breaching the JBM-Tension requirements contract . . ..

JBM states that although Tension has alleged that it interfered with Tension's contracts with Customer A and Customer B, it has not alleged any facts specifying the terms or obligations arising under those contracts nor has it alleged any facts demonstrating any "interference" that caused these customers to "breach" their contracts with Tension. JBM also argues that Tension must allege that its actions were without justification or excuse. JBM argues that the allegations above are conclusory and when a plaintiff alleges fraud as the "improper means" plaintiff must identify the "who, what, where, when and how" of the alleged fraud. JBM also argues that the allegations in ¶¶ 89 and 90 are not sufficient factual allegations to show "improper means" and that Tension must allege that JBM's interference caused Customers A and B to breach their contractual obligations with Tension.

Tension argues that it has a business relationship with Customer A and Customer B and that JBM knew of these relationships. Tension argues that in the First Amended Complaint, it alleges that "on Monday June 23, 2014, Marcus telephoned buyers for Customer A and Customer B, and advised them that . . .new orders for goods would need to be sent directly to JBM Envelope." (FAC, ¶¶ 47-48). The Complaint also alleges that "on Tuesday, June 24, 2014, . . . Marcus told the buyer for Customer A that

the only way Customer A could obtain Customer A's requirement of envelopes would be to purchase the envelopes directly from JBM Envelope." (FAC, ¶¶ 53-54). Tension asserts that these statements constituted "misrepresentations of fact."

The Court finds that Tension has sufficiently stated a claim for tortious interference with business relationships. As noted above, one of the elements of this claim is a contract or valid business expectancy. JBM argues that Tension has failed to allege any facts relating to the specific terms or obligations for any "contracts" it had with Customer A or B or how those terms or obligations have been breached as a result of JBM's alleged interference. However, in <u>Ariel Preferred Retail Group, LLC v. CWCapital Asset Management</u>, No. 4:10CV623SNLJ, 2011 WL 4501049 (E.D.Mo. Sept. 28, 2011), the Court noted, "a plaintiff need not have an existing contract with a third party to maintain a claim for tortious interference. . . .It is sufficient that a plaintiff have a probable future business relationship that gives rise to a reasonable expectancy of financial benefit." <u>Id</u>. at *2 (internal citations omitted). The Court finds that Tension's Complaint pled this element of the claim by alleging that "Tension Envelope has existing business relationships with many of its customers to supply those customers with envelopes that are currently manufactured for Tension by JBM Envelope, including Customer A and Customer B." (FAC, ¶ 84). Additionally, the Court finds that Tension has sufficiently pled the other elements of the claim because it has pled that JBM acted improperly in interfering with these business relationships. In <u>Ariel</u>, the Court stated:

> [A] plaintiff must plead that defendant not only induced a breach of the contract/business expectancy but that the defendant had knowledge of said contract and that defendant's actions were done without justification and/or by improper means . . .A defendant is justified in inducing a breach of contract unless the defendant uses improper means to induce the breach. . . .The absence of justification is an essential element of the claim

11

for interference with contract. . . .An absence of justification refers to the absence of a legal right to justify the actions taken by the defendant in inducing the breach. . . .If the defendant has a legitimate interest, economic or otherwise, in the contract or business expectancy that the plaintiff alleges was breached, then the plaintiff must establish that defendant employed improper means in inducing the breach, i.e., even if there is economic justification for interfering with a contract/business expectancy, a defendant cannot employ improper means. . . . Improper means include, those that are independently wrongful, such as threats, violence, trespass, defamation, **misrepresentation of fact**, restraint of trade, or any other wrongful act recognized by statute or common law.

Id. at *3 (internal citations and quotations omitted)(emphasis added).

In the Amended Complaint, Tension pled that JBM falsely claimed that: 1) it has a legal right to sell direct to Customers A and B, 2) the Tension-JBM agreement no longer existed, 3) Tension could no longer supply Customers A and B with their envelopes and 4) Customers A and B had no other choice, but to begin buying their envelopes from JBM. Thus, these allegedly false statements qualify as misrepresentations of fact. JBM asserts that it did not falsely claim that the agreement no longer existed or that Tension could no longer supply the envelopes and that the customers had no choice but to begin buying their envelopes from JBM. However, in ruling on a motion to dismiss, the Court assumes the truth of the factual allegations contained in the Complaint. The Court finds that Tension has sufficiently pled the elements necessary to state a claim for tortious interference. Accordingly, JBM's Motion to Dismiss Count III is hereby **DENIED**.

**4. Misappropriation of Trade Secrets**

"A claim for misappropriation of trade secrets under the [Missouri Uniform Trade Secrets Act] has three elements: (1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or

12

injunctive relief." <u>Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC</u>, 422 S.W.3d 312, 320 (Mo. banc 2014).

JBM argues that Tension has failed to state a claim for misappropriation of trade secrets because the identity of two customers and their unique requirements for their envelopes does not rise to the level of a "trade secret." Additionally, JBM argues that even if this information is considered a trade secret, Tension never took any steps to protect this information.

Tension argues that it is not only the customer's identities, but the specific requirements and each customer's unique envelope needs which constitute a trade secret. Tension states that in the Complaint, it pled that it "uses efforts which are reasonable under the circumstances to maintain the secrecy of the identity of its customers, along with their specific and unique requirements, including having other suppliers sign non-compete agreements." (FAC, ¶102).

The Missouri Uniform Trade Secrets Act (MUTSA), Mo.Rev.Stat. § 417.450, et seq. defines "trade secret" as "a formula, pattern, compilation, program, device, method, technique, or process" that derives value from not being known and not being readily ascertainable by proper means by others who can obtain economic value from its use. Mo.Rev.Stat. § 417.453(4). "Also, in order to be considered a trade secret, the information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy." <u>Conseco Finance Servicing Corp. v. North American Mortgage Co.</u>, 381 F.3d 811, 819 (8th Cir. 2004). In <u>Walter E. Zemitzsch v. Harrison</u>, 712 S.W.2d 418 (Mo.App.1986), the Court stated: "It is obvious that the identity of the customers with which the St. Louis office dealt is not a trade secret. . . .As to the [the customers']

individual requirements, such data is not common knowledge to the same extent. But it is still information obtainable without recourse to misappropriation from a former employer." Id. at 421 (quoting Metal Lubricants Co. v. Engineered Lubricants Co., 284 F.Supp. 483, 488 (E.D.Mo. 1968), aff'd 411 F.2d 426 (8th Cir.1969)).

The Court finds that Tension has failed to sufficiently allege that the identity of its customers or their unique envelope needs are trade secrets as defined under the MUTSA. In American Builders & Contractors Supply Co. Inc. v. Roofers Mart, Inc., No. 1:11-CV-19(CEJ), 2012 WL 3027848, (E.D.Mo. July 24, 2012), the court noted, "[t]he Missouri Supreme Court has recently affirmed that 'customer contacts' are 'not protectable under a theory of confidential relationship or trade secret.'" Id. at *3 (quoting Western Blue Print Co. LLC v. Roberts, 367 S.W.3d 7 (Mo.banc 2012)). The customer's envelope requirements are a closer issue, but the Court finds that this is not a trade secret, because this is information which JBM could have acquired from the customers themselves. Additionally, even if the unique requirements were found to constitute a trade secret, Tension did not take adequate steps to protect this information. In the Complaint, Tension alleges that it took reasonable steps to maintain the secrecy of this information, "including having *other suppliers* sign non-compete agreements . . .." However, it is undisputed that Tension never insisted that JBM sign a non-compete agreement. Therefore, the Court finds that Tension has failed to state a claim for misappropriation of trade secrets and therefore **GRANTS** JBM's Motion to Dismiss Count IV of the First Amended Complaint.

### 5. Unfair Competition

Under Missouri law, the test for unfair competition is whether the defendant's acts are such as are calculated to deceive the ordinary buyer

14

making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates. . . .When analyzing unfair competition claims, Missouri courts look to the Restatement (Third) of Unfair Competition. . . .Under the Restatement, liability for causing harm to the commercial relations of another can result from "acts or practices relating to (1) deceptive marketing; (2) infringement of trademarks and other indicia of identification; and (3) appropriation of intangible trade values including trade secrets and the right of publicity.

American Traffic Solutions, Inc. v. B& W Sensors, LLC, No.4:13CV0229AGF,

2014 WL 1272509, *5 (E.D.Mo. Mar. 27, 2014)(internal citations and quotations

omitted).

In the Amended Complaint, Tension alleges the following:

108.   JBM Envelope marketed its goods as for sale only to the trade, and not to end users.

109.   By marketing its goods in this way, JBM Envelope sought to assure envelope sellers that those sellers could trust JBM with the seller's confidential information, including the identity of the customer and the customer's unique requirements, by assuring the seller that JBM would not use that confidential information to sell directly to the seller's customer.

110.   Tension Envelope relied on JBM Envelope's promises that JBM would not sell directly to Tension's customers by agreeing to buy goods from JBM and, in the process, necessarily sharing with JBM the identity of Tension's customers, along with the customer's unique requirements.

111.   In relying on JBM Envelopes' deceptive marketing, Tension Envelope has been damaged by JBM's use of Tension's confidential information to sell directly to Tension's customers, despite JBM's representations in its marketing that it would not do so.

112.   As a result of Tension Envelope's reasonable reliance on JBM's representations, JBM has diverted trade from Tension to JBM.

113.   Additionally, JBM Envelope has appropriated Tension Envelope's trade secrets to sell directly to Tension's customers.

JBM argues that Tension has failed to state a claim for unfair competition because

identity of Tension's customers and their unique requirements does not constitute

"intellectual property" or "confidential information."  Rather, JBM argues that this information belongs to the customers themselves and to JBM which supplies the envelopes to the customers.  JBM also states that it was not in a position of confidence with Tension and thus there were no heightened or special duties owed to Tension. The only duty to preserve any alleged confidential information would arise from execution of a confidentiality or non-disclosure agreement.

Tension states that in order to plead a claim for unfair competition, it need only allege facts demonstrating that JBM's behavior "violated society's notions of fair play and fundamental fairness."  Adbar Co. v. PCAA Missouri, LLC, No. 4:06-CV-1689(JCH), 2008 WL 68858, *12 (E.D.Mo. Jan. 4, 2008).  Tension also argues that the First Amended Complaint alleges that JBM engaged in deceptive marketing, including making false and deceptive claims on its website.  Tension argues that under Missouri law, a party can be subject to liability for harm to another's commercial relations where the party engages in deceptive marketing.

In Sales Resource, Inc. v. Alliance Foods, Inc., Nos. 4:008CV0732TCM, 4:09CV0666, 2009 WL 2382365 (E.D.Mo. July 30, 2009), the Court noted:

> Section 1 of the Restatement [of Unfair Competition] sets forth three categories of activity that are exceptions to the general principle that "[o]ne who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other." ... Restatement §1. Those categories are: (1) deceptive marketing, (2) trademark infringement, and (3) appropriation of intangible trade values including trade secrets and the right of publicity. Id. at § 1(a)(1)-(3).

Id. at *6.

The Court also observed that a claim of unfair competition was not limited to these three categories:

> "However, these specific forms of unfair competition do not fully exhaust the scope of statutory or common law liability for unfair methods of competition, and Subsection (a) therefore includes a residual category encompassing other business practices determined to be unfair." <u>Id</u>. at cmt. g. "As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also constitute an unfair method of competition." <u>Id</u>. For example, "interference in the commercial relations of a competitor resulting from unlawful threats directed at customers of the competitor will . . .constitute unfair competition." <u>Id</u>. Also, "a court may conclude that a failure to disclose to prospective customers particular information that is critical to an intelligent purchasing decision constitutes unfair competition." <u>Id</u>.

<u>Id</u>. (quoting <u>Restatement (Third) of Unfair Competition</u>, cmt. g).

In the instant case, the Court finds that although the allegations contained in the First Amended Complaint do not precisely fit into any of the three traditional categories of liability outlined above, it is possible that they could fit into the residual category. This is especially true in light of the Court's earlier conclusion determining that Tension has stated a claim for tortious interference with business relationship. Accordingly, the Court hereby **DENIES** JBM'S Motion to Dismiss Count V – Unfair Competition.

Accordingly, for the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** JBM's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 36).

## C. Tension Envelope Corporation's Motion for Leave to File Second Amended Complaint

### 1. Standard

Motions to amend pleadings implicate the standards for leave to amend under both Rule 15(a) and Rule 16(a) of the Federal Rules of Civil Procedure. . . . Under Rule 15(a), leave to amend should be freely given when justice so requires. . . .Under this liberal standard, denial of leave to amend pleadings is appropriate only if there are compelling reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment.

17

<u>Trademark Medical, LLC v. Birchwood Laboratories, Inc.</u>, 22 F.Supp.3d 998, 1001

(E.D.Mo. May 22, 2014)(internal citations and quotations omitted).

### 2. Fraudulent Misrepresentation

JBM argues that the motion to amend should not be granted as it is futile. JBM

argues that Tension has not sufficiently pleaded with particularity facts demonstrating a

false material representation, Tension's reliance on its truth, Tension's right to rely on

the representation and that Tension suffered consequent and proximately caused

damages.

The elements of a fraudulent misrepresentation claim under Missouri law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's
> knowledge of its falsity or ignorance of its truth; (5) the speaker's intent
> that it should be acted on by the person in the manner reasonably
> contemplated; (6) the hearer's ignorance of the falsity of the
> representation; (7) the hearer's reliance on the representation being
> true; (8) the hearer's right to rely thereon; and (9) the hearer's
> consequent and proximately caused injury.

<u>Freitas v. Wells Fargo Home Mortg.,Inc.</u>, 703 F.3d 436, 438-39 (8th Cir. 2013) (quoting

<u>Renaissance Leasing, LLC. v. Vermeer Mfg. Co.</u>, 322 S.W.3d 112, 131-32 (Mo. banc

2010)). Additionally, the court noted that in pleading a claim of fraudulent

misrepresentation, the complaint must meet the heightened pleading standards of

F.R.Civ.P. 9(b) for claims alleging fraud. "The plaintiff must plead 'such matters as the

time, place and contents of false representations, as well as the identity of the person

making the misrepresentation and what was obtained or given up thereby.'" <u>Id</u>. at 439,

(quoting <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920 (8th Cir. 2001)).

In the proposed Second Amended Complaint, Tension alleges that JBM made

intentional, material misrepresentations of fact. Tension alleges that some of these

18

statements were made on JBM's website: "We serve the trade and do NOT sell to the end user." (SAC, ¶ 22); "JBM does not sell to end users." (SAC, ¶ 25); "We work with trade customers exclusively . . .." (SAC, ¶ 26). "[L]et us help you meet your customer's needs." (SAC, ¶ 29). Tension also asserts that in 2009, in written materials submitted to Customer B, JBM stated, "We do not sell direct; we only sell to the trade." (SAC, ¶ 72).

Tension also alleges that there were oral representations were made by Greg Sheanshang. Tension alleges that in 2000, Greg represented and promised Tension's general manager that "JBM Manufacturing did not, and would not, ever sell direct to Tension Envelope's customers." (SAC, ¶¶ 31,33). "Greg also expressly and unequivocally represented and promised to Broadbear that Tension Envelope could trust JBM Envelope to keep secret, and not use for JBM's own benefit, information about Tension Envelope's customers." (SAC, ¶ 34).

Other statements were allegedly made by Marcus Sheanshang. Tension alleges that on February 12, 2012, Marcus told Tension's Regional Sales Manager, Jim Thompson, that JBM was a trade manufacturer and does not sell to its customer's customers. (SAC, ¶ 65). Tension also alleges that Marcus told Broadbear that JBM had no intention of selling direct to commercial seed customers, i.e., customers of Customer C. (SAC, ¶ 101). "Marcus responded on February 6, 2013, by again falsely assuring Broadbear that JBM Envelope was only interested in marketing to retail seed customers and not to Customer C's customers." (SAC, ¶ 106). "On October 9, 2013, Marcus responded by . . .once again falsely representing that JBM Envelope's plans were to sell to retail seed packet customers only." (SAC, ¶108). Tension alleges that during a meeting on March 27, 2014 with Broadbear and Brackhahn, Tension's director of

purchasing, when asked if there was anything that he needed from Tension, Marcus responded, "sell more envelopes for us to make, just like for [Company A]." (SAC, ¶ 123). Additionally, Tension alleges that during a meeting on June 13, 2014, at 11:00 a.m. Marcus falsely represented that JBM Envelope was interested in working with Tension and would take steps to repair the relationship. (SAC, ¶¶ 133-134). Marcus also represented that he would return samples which Thompson had provided and provide him with pricing and other information for a potential new line of business. (SAC, ¶136). When Bill Berkley, Tension's President and CEO stated to Marcus on June 23, 2014 that "This is contrary to everything you have told us about not going direct with our customers," Marcus confirmed "I agree." (SAC, ¶151-152). When Berkley asked Marcus if he intended to sell directly to any of Tension's other customers Marcus said no." (SAC, ¶153).

Tension argues that the statements on JBM's website cannot rise to the level of a false, material representation that Tension should have rightly relied upon. In support of this argument, Tension cites to Moses.com Securities Inc. v. Comprehensive Software Sys. Inc., 406 F.3d 1052, 1064 (8th Cir.2005). In that case, the plaintiff alleged that the language of the defendant's press release was sufficient to state its claim for fraudulent misrepresentation. However, the Court found that the plaintiff has "failed to allege any facts, however, that could support an inference that the press release was directed towards it with the intent that it rely on any particular statement therein." Id. at 1064. The Court also noted that even if the statement contained misstatements, "it would not amount to fraudulent misrepresentation without some facts that suggest a specific intent on the part of [defendant] to target Moses." Id. Additionally, Tension

20

argues that the statements allegedly made by Greg Sheanshang were made over fourteen years ago and some statements allegedly made by Marcus were made over two years ago. JBM argues that there are no allegations that the statements were false at the time they were made because they were not. Instead they were statements only of current business intentions.

In response, Tension argues that even if the statements on the website do not constitute fraudulent misrepresentations, "JBM made repeated affirmative statements – above and beyond those on its website- that it would not sell direct *long after* JBM planned to sell direct. In other words, JBM knew that its statements were false at the time they were made." (Tension's Reply Suggestions, p. 5). Additionally, Tension argues that "[r]ead together, rather than ignored or singled out, Tension's 255-paragraph pleading provides ample support for Tension's allegations that JBM knowingly misrepresented material facts about JBM's intent to sell direct to Tension's customers." Id. The Court having reviewed all of the alleged misrepresentations in the proposed Second Amended Complaint, and viewing the facts in the light most favorable to the plaintiff, finds that Tension has sufficiently alleged and plead the elements necessary to state a claim for fraudulent misrepresentation. Accordingly, JBM's Motion to Dismiss the Fraudulent Misrepresentation claim is hereby **DENIED**.

### 3. Fraudulent Concealment

JBM argues that Tension should not be allowed to amend its complaint to assert a claim for fraudulent concealment because the Missouri Supreme Court has not recognized a separate tort of fraudulent nondisclosure. In Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758 (Mo. banc 2007), the Court stated, "[t]his Court has

not recognized a separate tort of fraudulent nondisclosure . . .Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." Id. at 765.  In Oliver v. Ford Motor Credit Co., LLC, 437 S.W.3d 352 (Mo.App.2014), the Court noted, "[e]ven though, however, a party's silence in the face of a legal duty to speak replaces the first element of the existence of a representation, [t]he same nine elements required to establish fraud by an affirmative misrepresentation must be proven in a fraud by silence claim. Id. at 358 (internal citation and quotations omitted).  JBM argues that it has no duty to disclose its business intentions to Tension or its plans to change its business model, especially since its statements to Tension at the time the statements were made were correct.  However, this is a fact which is disputed by Tension.  Additionally, Tension states in opposition that "Missouri law is clear that under some circumstances a person's failure to disclose information constitutes a positive misrepresentation."  (Tension's Reply Suggestions, p. 6).

In Kesselring v. St. Louis Group, Inc., 74 S.W.3d 809 (Mo.App.2002), the Court stated, "The Restatement identifies five circumstances under which persons in a business transaction have a duty to disclose:

One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or

misleading a previous representation that when made was true or
believed to be so; and

(d) the falsity of a representation not made with the expectation that it
would be acted upon, if he subsequently learns that the other is about
to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to
enter into it under a mistake as to them, and that the other, because of
the relationship between them, the customs of the trade or other
objective circumstances, would reasonably expect a disclosure of
those facts.

Id. at 814 (quoting Restatement (Second) Torts § 551(1)). See also, Harris v. Mid-West

Egg Donation L.L.C., 365 S.W.3d 274, 277-78 (Mo.App. 2012).

Tension argues that a special relationship is not necessary to prove a duty to

disclose and that such a duty can arise when a party has a duty to reveal "subsequently

acquired information that he knows will make untrue or misleading a previous

representation that when made was true or believed to be so." Restatement (Second) of

Torts, §551(2)(c).  Additionally, Tension argues that a duty can arise "where the newly

discovered information has a direct bearing upon the information previously given, the

defendant has a 'duty' to communicate the new information." Rose v. Arkansas Valley

Envtl. & Util. Auth., 562 F.Supp. 1180, 1207 (W.D.Mo. 1983).  Tension argues that it

has identified many representations made by JBM which gave rise to a duty on the

JBM's part to disclose the information which made the previous representations untrue.

Additionally, Tension argues that the Second Amended Complaint also contains

allegations regarding JBM's partial disclosure of its intention to sell to certain customers.

Accepting the plaintiff's factual allegations as true and granting all reasonable

inferences in Tension's favor, the Court finds that Tension has sufficiently alleged the

elements necessary to state a claim for fraudulent misrepresentation through

23

nondisclosure.  As the courts have not specifically recognized fraudulent concealment as a separate tort, the Court directs Tension to modify its proposed Second Amended Complaint and reword these allegations as a claim for Fraudulent Misrepresentation through Nondisclosure.  Accordingly, JBM's Motion to Dismiss the Fraudulent Concealment Claim is hereby **DENIED**.

### 4. Economic Loss Doctrine

JBM argues that Missouri's Economic Loss Doctrine prohibits Tension from recovering in tort for economic losses that are contractual in nature. JBM argues that Tension re-styles its claims for breach of a requirements contract and promissory estoppel as fraudulent misrepresentation and concealment claims.  JBM states that the economic loss doctrine requires Tension to allege that it suffered additional damages outside of any alleged contract.  Thus, JBM argues the fraud claims are nothing more than "cloaked' contract claims barred by the economic loss doctrine.

In response, Tension argues that the economic loss doctrine does not apply, because the application of the doctrine requires the existence of a valid and enforceable contract with terms "within the four corners of the contract" that preempt the alleged fraudulent statements.  Compass Bank v. Eager Road Associates, LLC, 922 F.Supp.2d 818, 827 (E.D.Mo. 2013).  Additionally, Tension states that pursuant to Fed.R.Civ.P. 8(d)(2), it is permitted to plead alternative and inconsistent claims in a complaint. Additionally, Tension states that its fraud claims and breach of contract claim are based on different allegations, rights, obligations and damages.  For example, Tension states that "JBM's promises not to sell direct induced Tension to enter into an exclusive requirements contract, and JBM's misrepresentations and nondisclosures fraudulently

24

induced Tension to maintain JBM as its exclusive supplier. . . .The economic loss doctrine is inapplicable to fraudulent inducement claims." (Tension's Reply Suggestions, p. 10).

"The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir.2010)(quoting Zoltek Corp. v. Structrual Polymer Group, Ltd., 2008 WL 4921611 *3 (E.D.Mo.Nov. 13, 2008), aff'd on other grounds, 592 F.3d 893 (8th Cir. 2010)). "As the Eighth Circuit has explained the doctrine in greater detail: 'A fraud claim *independent of the contract* is actionable, but it must be based upon a misrepresentation that was *outside of or collateral to the contract*, such as many claims of fraudulent inducement." Compass Bank, 922 F.Supp.2d at 827 (citing AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir.1998)).

At this early stage of the litigation, the Court does not find that the economic loss doctrine clearly applies to preclude plaintiff's fraud claims. As discussed above, the Court has yet to determine if the parties had a requirements contract. If it is determined that no requirements contract existed between the parties, then the doctrine would not apply. However, the Court is in agreement with Tension that it is allowed to plead alternative theories of recovery. Therefore, the Court determines that the doctrine does not preclude Tension from filing an amended Complaint which asserts claims for Fraudulent Misrepresentation and Fraudulent Misrepresentation through nondisclosure.

Accordingly, for the reasons stated above, the Court finds that plaintiff has established good cause for seeking leave to amend its complaint. Therefore, the Court hereby **GRANTS** Tension's Motion for Leave to File a Second Amended Complaint

(Doc. # 65).  Tension shall file its Second Amended Complaint on or before **March 13, 2015**.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES AS MOOT** JBM's Motion to Dismiss plaintiff's initial Complaint (Doc. # 25); **GRANTS IN PART and DENIES IN PART** JBM's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 36) and **GRANTS** Tension's Motion for Leave to File a Second Amended Complaint (Doc. # 65).

Plaintiff shall file its Second Amended Complaint in accordance with the directives contained in this Order on or before **March 13, 2015**. The stay previously imposed by this Court is now lifted.  The parties shall confer and submit a revised scheduling and trial order to the Court on or before **March 13, 2015**.


Date: March 3, 2015                                   **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                 Fernando J. Gaitan, Jr.
                                                      United States District Judge

26